W. A. SWAN v. ANDREW BROWN AND J. W. BREWER,
  *Partners as Brown & Brewer*, AND SAMUEL BARRETT.

### No. 347.

BREACH OF CONTRACT— *Measure of Recovery — Terms of Agree-
ment*.  In an action to recover one year's rental, under a coal-
mining lease which contained an agreement by the lessees to
operate the mine continuously and to pay as royalty a fixed price
per bushel for all "lump" and "mine-run" coal taken from the
mine, and that the annual output of the mine should be 500 cars
of 500 bushels each of royalty coal, the defendants, who had
mined only a small part of the amount so undertaken to be mined,
offered no evidence in mitigation of damages laid by the plaintiff
as the total royalty which would have been due on the minimum
amount agreed to be mined.  *Held*, that the lease furnished the
agreed minimum measure of plaintiff's right of recovery for one
year's use and control of the mine by the defendant.

Error from Crawford district court;  J. S. WEST,
judge.   Opinion filed February 18, 1899.   Reversed.

*B. F. Pursel*, for plaintiff in error.

*Fuller & Randolph*, for defendants in error.

The opinion of the court was delivered by

MILTON, J. :   This action was brought by the plain-
tiff in error against the defendants in error to recover
the sum of $1250, claimed to be due under the terms
of a lease of certain land for coal-mining purposes, for
the year beginning August 1, 1893.  The defendants
were the assignees of the lease.  It was executed on
the 20th day of June, 1893, and the assignment thereof
was made in February, 1894.  By the terms of the
lease, the lessees agreed that at their own expense
they would sink all necessary shafts, put in all requisite
machinery and hoisting apparatus, construct suitable
railway-tracks and switches, and erect and maintain

all equipments necessary to successful operation of the mine, and that they would put the mine in a first-class condition and would employ experienced miners to operate the same. They agreed to pay as royalty one-half cent per bushel of eighty pounds for all "lump" and "mine-run" coal taken from the mine, and to pay the amount due for royalty for each month on or before the 1st day of the following month. The lease further provided as follows :

"Said parties of the second part further agree to commence work at once and vigorously prosecute the same, so as to have said mine in working order at the earliest possible time. Said mine shall have a capacity of not less than two cars per day of royalty coal, in the absence of 'horsebacks' and other faults in the coal stratum.

"Said parties of the second part agree to operate said mine continuously, unless prevented by strikes or other unforeseen or unavoidable causes, until June 20, 1895, or until all coal underlying said tract of land (except as hereinafter provided) which can be practicably mined shall have been taken out. The annual output of said mine, dating from August 1, 1893, shall not be less than 500 cars of 500 bushels each of royalty coal.

" This lease and contract shall continue and be in force for a period of two years, unless all the minable coal underlying said land be removed under this contract before the expiration of two years."

It was also stipulated in the lease that all the machinery and other property owned by the lessees and used in and about the operation of the mine should remain on the land after the termination of the lease until all claims and demands of the lessor for royalties, or in any other manner growing out of the lease, should be satisfied, and that the lessor should have a lien on all of the said property for the payment of such claims and demands. The plaintiff testified that he

had received in the aggregate $450 and no more, as royalties from the original lessees, and from the defendants for the year named in the petition.   There was no dispute that this sum was in full payment of all royalties accruing for the coal actually mined during that time.

While the answer set up various defenses, the only substantial issue presented for decision by the trial court was, whether the lease bound the defendants to pay annually a sum equal to the agreed royalty on 500 cars of 500 bushels of coal each, even if a less quantity than the minimum named in the lease should be actually taken from the mine in any year.   This issue was decided in favor of the defendants, and, in the absence of testimony respecting actual damages resulting from the failure of the defendants to comply in this particular with the terms of the lease, judgment was entered for nominal damages in the sum of one dollar.

The testimony of the defendant showed no substantial reason for not operating the mine more extensively, except that the operation thereof was unprofitable, owing to the poor market for coal.   The defendants offered no evidence in mitigation of damages.   A short time before the commencement of this action the surrender of the lease by the lessees was proposed on certain conditions, but no agreement was reached and the surrender was not made.   The evidence offered in respect to an explosion which occurred in the mine in the latter part of December, 1893, cannot be regarded as having any weight, for the reason that the defendants took the assignment of the lease after that occurrence, with full knowledge of the same.

Construing the lease as an entirety, we think it

Peterson v. Bank.

must be held that it furnishes the agreed minimum measure of plaintiff's recovery for the one year's use and control of the mine by the defendants and their assignors. The testimony of the plaintiff showed that he had received only $450 as royalties for coal actually mined during the year named in the petition. *Prima facie,* he was then entitled to judgment for $800. The testimony on behalf of the defendants did not tend to disprove the *prima facie* case thus made by the plaintiff for said sum.

The judgment of the district court will be reversed and the cause remanded for a new trial.